UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
SAMSUNG DISPLAY CO., LTD.,                                   :
                                                             :
                          Plaintiff,   :   14-CV-1353 (JPO)
         -v-                                                :
                                                             :   OPINION AND ORDER
ACACIA RESEARCH CORPORATION,                                 :
                                                             :
                         Defendant.   :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      Plaintiff Samsung Display Company, Ltd. ("SDC") brought this action against Defendant Acacia Research Corporation ("Acacia"), alleging that Acacia acted unlawfully in initiating, through its affiliate entities, patent infringement lawsuits against SDC customers. SDC asserts six causes of action against Acacia: breach of contract, tortious interference with contractual relations, tortious interference with prospective contractual relations, unfair competition, abuse of process, and prima facie tort. Acacia moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

      For the reasons that follow, Acacia's motion is granted in part and denied in part.[1]

**I.    Background**

    **A.    Factual Background**[2]

      SDC is a Korea-based corporation, created as a spin-off from Samsung Electronics Company, Ltd. ("SEC") in April 2012. (Compl. ¶ 2.) Acacia is a Delaware corporation with its

---

[1] In light of the parties' legitimate confidentiality interests, the Court also grants the motions to seal at docket numbers 10, 27, and 29.

[2] The facts below are drawn from SDC's Complaint (filed under seal), unless otherwise noted.

1

principal place of business in Newport Beach, California.  It owns and/or controls Acacia Research Group LLC ("ARG"), Innovative Display Technologies LLC ("IDT"), and Delaware Display Group LLC ("DDG").

On March 2, 2011, SEC and Acacia entered into an agreement (the "Option Agreement"), under which Acacia granted SEC licenses and covenants not to sue with respect to certain patents owned by Acacia.  (*See* Declaration of Edward Treska in Support of Motion to Dismiss, Ex. A ("Option Agreement") (filed under seal).)[3]  In particular, the Option Agreement provides the following:

> [Acacia] and the Acacia Entities hereby represent, warrant, and covenant to Samsung that Samsung's Authorized Third Parties shall be perpetually immune from any claim or suit under the Acacia Patents for the use . . . of any Samsung Products . . . [and] Combination Products . . . .

(*Id.* § A2.5.)

In addition, the Option Agreement requires that Acacia "ensure that the Acacia Entities abide by the terms and conditions of this Option Agreement . . . and [the] Covenant-Not-To-Sue Addendum set forth at Addendum A."  (*Id.* § 3.1.)

The Option Agreement defines "Acacia" as "[Acacia Research Corporation] and its past, present, and current Affiliates," (*id.* § 1.1), and "Samsung" as "Samsung Electronics Co., Ltd. and its Affiliates" (*id.* § 1.8).  According to the Complaint, SDC is an affiliate of SEC, and ARG,

---

[3] New York law governs the Option Agreement.  (Compl. ¶ 14; Option Agreement, § 4.11.)

IDT, and DDG are affiliates of Acacia, as the term is defined in the Option Agreement.[4] (Compl. ¶ 9.)

The Complaint alleges that, contrary to express provisions of the Option Agreement, Acacia's affiliates initiated patent infringement lawsuits against SDC customers for their use of SDC products.[5]  The Complaint identifies nine lawsuits in particular: four filed by IDT in Texas in June 2013; one filed by IDT, also in Texas, in October 2013; and four filed by DDG and IDT in Delaware in December 2013. These suits, the Complaint charges, amount to a material breach of the Option Agreement.

The Complaint claims that, as a result of the lawsuits, SDC has suffered injury in the form of "irreparable harm" to its "goodwill and reputation" among its customers, who relied on SDC's representations and assurances that they would not be subject to suit by Acacia for their use of SDC products. (*Id.* ¶¶ 24, 28.)  These customers have reportedly "complained to SDC" about the lawsuits and "expressed concern to SDC regarding its intellectual property practices." (*Id.* ¶ 24.)  The Complaint further alleges that Acacia has maintained its lawsuits notwithstanding written notice from SEC advising Acacia of its material breach and its effect on SDC's relationship with its customers. (*Id.* ¶ 25.)  Acacia's initiation of the suits and failure to cure its breach are, the Complaint says, "willful" and "in bad faith." (*Id.* ¶¶ 26, 27.)

---

[4] Under the Option Agreement, "affiliate" means "any entity, including parent companies and majority-owned subsidiaries, now or hereafter acquired or formed that is directly or indirectly controlled" by SEC or Acacia.  (Option Agreement, § 1.7.)

[5] SDC considers these customers to be "Authorized Third Parties" within the meaning of the Option Agreement.  (*See* Compl. ¶ 33; Option Agreement, § A1.5 ("'Authorized Third Party' shall mean a third party . . . that is directly or indirectly authorized by Samsung or its Affiliates to exercise any legal rights with respect to a Samsung Product or a Combination Product . . . .").)

### B. Procedural History

SDC filed its Complaint against Acacia on February 28, 2014. (Dkt. No. 3.) Pursuant to an order by Judge Crotty, the Complaint was filed under seal. (*Id.*)

Acacia filed its motion to dismiss the Complaint on May 6, 2014. (Dkt. No. 17.) On May 22, 2014, SDC filed both an opposition to Acacia's motion and its own conditional motion for leave to amend the Complaint. (Dkt. Nos. 24, 25.) Acacia filed a combined reply to SDC's opposition and an opposition to SDC's motion for leave to amend on June 2, 2014. (Dkt. No. 28.) SDC filed a reply in support of its motion for leave to amend on June 12, 2014. (Dkt. No. 30.) All filings were made wholly or partially under seal.

## II. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss under Federal Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The standard of "facial plausibility" is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility is distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted). At the same time, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotation mark omitted). "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

On a motion to dismiss, a court may properly consider documents attached to the complaint or incorporated in it by reference. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995)). The court may also rely on documents "integral" to the complaint. *Id.* (internal quotation marks omitted). The Option Agreement was not attached to SDC's Complaint, but is referenced therein and is at the core of the parties' dispute. It is therefore both incorporated by reference in, and integral to, the Complaint. *See Stuto v. Fleishman*, 164 F.3d 820, 826 n.1 (2d Cir. 1999); *Int'l Audiotext Network*, 62 F.3d at 72.

### III. Discussion

As noted above, SDC's Complaint asserts six causes action: breach of contract, tortious interference with contractual relations, tortious interference with prospective contractual relations, unfair competition, abuse of process, and prima facie tort. The Court addresses these in turn.

#### A. Breach of Contract

SDC's first claim is straightforward: Acacia's failure to ensure its affiliates' compliance with the covenant not to sue provision amounts to a material breach of the Option Agreement. (Compl. ¶ 23.) Acacia's breach is alleged to have caused SDC to suffer "monetary loss and loss of goodwill," in an amount "difficult to ascertain." (*Id.* ¶ 34.)

Acacia seeks dismissal of this claim on two independent grounds. First, Acacia argues that SDC has failed to plead that Acacia actually breached the Option Agreement. Acacia says that the Option Agreement does not bar it from suing SDC customers for patent infringement

5

altogether; rather, it precludes suit against SDC customers only for the use of "Samsung Products" or "Combination Products." (Dkt. No. 18, Memorandum of Law in Support of Motion to Dismiss Complaint, at 5 ("Def. Memo").) Acacia contends that SDC has failed to identify any particular SDC product accused of infringement in Acacia's lawsuits. (*Id.*) Second, Acacia argues, SDC's pleading is inadequate because its allegations of damages are "conclusory." (*Id.* at 6–7.)

Neither argument can prevail at this stage. The Complaint alleges a specific and material breach, and in doing so acknowledges the precise content of Acacia's obligations under the Option Agreement. (*See* Compl. ¶ 23 ("[The] IDT and DDG lawsuits violate the covenant not to sue provisions of the Option Agreement *insofar as they allege SDC's customers infringe Acacia Patents by their use of SDC products*." (emphasis added)).) The Complaint identifies the relevant Acacia affiliates, the underlying patents at issue, the allegedly unlawful infringement suits, and the contractual provisions allegedly breached. (*Id.* ¶¶ 3, 15–22, 32–33.) These allegations are sufficient to withstand a motion to dismiss under Rule 12(b)(6).[6]

Likewise, SDC has adequately pleaded damages. SDC has identified specific injury in the form of damage to its goodwill and reputation—and that is satisfactory on a motion to dismiss. *See Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp.

---

[6] The cases Acacia offers in support of the contrary conclusion are inapposite, because they addressed pleadings that failed to allege essential elements of a breach of contract claim. *See Orange Cnty. Choppers, Inc. v. Olaes Enterprises, Inc.*, 497 F. Supp. 2d 541, 554 (S.D.N.Y. 2007) (dismissing claim for "fail[ing] to allege the specific provision of the [contract] that [the counterdefendant] allegedly breached—an essential requirement for a breach of contract claim"); *King's Choice Neckwear, Inc. v. Pitney Bowes, Inc.*, 09-CV-3980, 2009 WL 5033960, at *4–6 (S.D.N.Y. Dec. 23, 2009), *aff'd*, 396 F. App'x 736 (2d Cir. 2010) (finding breach of contract claim foreclosed by the unambiguous language of the parties' agreement); *Martinez v. Vakko Holding A.S.*, 07-CV-3413, 2008 WL 2876529, at *2 (S.D.N.Y. July 23, 2008) (dismissing breach of contract claim for failure to identify "specific provision[] of the contract upon which liability [was] predicated"). The Complaint here suffers from no such infirmity.

2d 552, 567 (S.D.N.Y. 2011) ("The [counterclaimants] allege that the purported breaches damaged their 'goodwill, standing and reputation.' These allegations are sufficient to survive a motion to dismiss." (citation omitted)) (citing *Smith McDonnell Stone & Co. v. Delicato Vineyards,* 94-CV-6474, 1995 WL 375918, at *4 (S.D.N.Y. June 22, 1995)). The fact that SDC's damages are "difficult to ascertain" does not strip its claim of plausibility.

    **B.**    **Tortious Interference with Contractual Relations**

SDC's second cause of action is for tortious interference with contractual relations. SDC alleges that it has "particular and existing business relationships" with several customers; that Acacia knew of these relationships; and that Acacia's breach of the Option Agreement made it impossible for SDC to honor contracts with its customers, to whom it represented and warranted that Acacia and its affiliates would not bring suit against them for patent infringement based on their use of SDC products. (Compl. ¶¶ 36–38.)

Tortious interference with contractual relations has five elements: (1) "the existence of a valid contract between the plaintiff and a third party," (2) "defendant's knowledge of that contract," (3) "defendant's intentional procurement of the third-party's breach of the contract without justification," (4) "actual breach of the contract," and (5) "damages resulting therefrom." *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 424 (1996).

SDC does not plead an actual breach of contract on the part of any of its customers. Rather, relying nearly exclusively on *Nat'l Football League Props., Inc. v. Dallas Cowboys Football Club, Ltd.*, 922 F. Supp. 849 (S.D.N.Y. 1996), it contends that a plaintiff need not plead breach; it is enough to allege "that the defendant's interference made the contract impossible to perform, or that the defendant induced the third party to render performance possible." *Id.* at 856. (Dkt. No. 24, SDC's Opposition to Acacia's Motion to Dismiss ("Pl. Opp."), at 7–8.)

This argument is directly at odds with controlling law. New York law is clear: nothing short of actual breach gives rise to a claim for tortious interference with contractual relations. *See, e.g.*, *Baylis v. Marriott Corp.*, 906 F.2d 874, 877 (2d Cir. 1990) ("Under traditional principles of New York law, a party may not recover for tortious inducement of breach of a contract without proving that the underlying contract has been breached."); *NBT Bancorp v. Fleet/Norstar Fin. Grp.*, 87 N.Y.2d 614, 620 (1996) ("[The plaintiff] urges that, as a matter of precedent and policy, a defendant's deliberate interference with plaintiff's contractual rights that causes damage should be punishable as tortious interference whether or not the contract was actually breached. New York law is to the contrary."); *Lama Holding Co.*, 88 N.Y.2d at 424 (citing *NBT Bancorp*, 87 N.Y.2d 614).[7]

Moreover, the breach must be committed by the third party, not the plaintiff. *See Fonar Corp.*, 957 F. Supp. at 481 (quoting *Jack L. Inselman & Co.,* 396 N.Y.S.2d at 349).

SDC's failure to plead that any of its customers breached a contract as a result of Acacia's conduct is fatal to its claim for tortious interference with contractual relations.[8] This claim is dismissed.

---

[7] *See also Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 481 (S.D.N.Y. 1997) ("Some courts have stated that in order to make out a claim for tortious interference with contract, a party either needs to show that there was a breach of the contract by the third party or that the defendant's interference made the contract impossible to perform. However, this proposition runs contrary to the rulings of the New York Court of Appeals and the Second Circuit. The Court of Appeals, for example, has held that '[i]n order for the plaintiff to have a cause of action for tortious interference of contract, it is axiomatic that there must be a breach of contract by the other party.'") (quoting *Jack L. Inselman & Co. v. FNB Financial Co.*, 41 N.Y.2d 1078, 1080 (1977)).

[8] In any event, SDC's action sounds more in contract than it does in tort. To the extent that SDC is alleging foreseeable injury as a result of Acacia's breach, SDC may seek to recover for that injury on its breach of contract claim. *See, e.g.*, *Terwilliger v. Terwilliger*, 206 F.3d 240, 248 (2d Cir. 2000) (quoting *Freund v. Wash. Square Press, Inc.,* 34 N.Y.2d 379, 382 (1974)).

### C. Tortious Interference with Prospective Contractual Relations

Third, the Complaint alleges that, by causing or allowing its affiliates to initiate and maintain patent infringement lawsuits against SDC's customers, Acacia committed the tort of interference with prospective contractual relations.[9]  In particular, the Complaint asserts that SDC has business relationships with its customers that "create an expectancy of future contract rights"; that Acacia knew of these relationships and interfered with them via its affiliates' lawsuits; and that Acacia "used dishonest, unfair and/or improper means" to interfere with SDC's relationships "and/or acted with the purpose of harming SDC."  (Compl. ¶¶ 41–45.)

To state a claim for tortious interference with prospective contractual relations in New York, a plaintiff must show that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship."  *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008).

Here again, SDC's Complaint cannot survive a motion to dismiss.  Specifically, SDC fails to adequately plead the tort's third element:  that Acacia acted for a wrongful purpose or by means that were dishonest, unfair, or improper.

This prong is generally satisfied only where the defendant's conduct "amount[s] to a crime or an independent tort."  *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 106 (2d Cir. 2012) (summary order) (quoting *Carvel Corp. v. Noonan,*

---

[9] This tort is also commonly referred to as "tortious interference with prospective economic advantage," *Lombard v. Booz-Allen & Hamilton, Inc.,* 280 F.3d 209, 214 (2d Cir. 2002), or "tortious interference with business relations," *Goldhirsh Grp., Inc. v. Alpert*, 107 F.3d 105, 106 (2d Cir. 1997).

3 N.Y.3d 182, 190 (2004)) (internal quotation mark omitted). Conduct that is not criminal or tortious is generally "insufficiently 'culpable'" to form the basis of a claim. *Id.* (quoting *Carvel*, 3 N.Y.3d at 190). The sole recognized exception to this rule is where a plaintiff shows—or at this stage, alleges—that a defendant acted "for the sole purpose of inflicting intentional harm" on the plaintiff. *Id.* (quoting *Carvel*, 3 N.Y.3d at 190) (internal quotation marks omitted).[10]

The Complaint makes no such allegations. It contains a threadbare recitation of the tort's third element (Compl. ¶ 44), unaccompanied by any allegation that Acacia's conduct was criminal, independently tortious, or solely motivated by a desire to inflict intentional harm on SDC. Nor does SDC's opposition to Acacia's motion to dismiss make any such claims. (Pl. Opp., at 7.)[11] Accordingly, SDC fails to state a claim for tortious interference with prospective contractual relations.

### D. Unfair Competition

SDC's next claim is that Acacia's conduct amounts to unfair competition under New York common law, § 349 of the General Business Law, and § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). SDC fails to state a plausible claim under any of these theories.

---

[10] The Court of Appeals has left open the possibility that more exceptions to the general rule might be recognized, *see Carvel*, 3 N.Y.3d at 190–91, but in none of its filings has SDC asked the Court to recognize such an exception here.

[11] In its opposition, SDC contends that the tort's third element "can be shown by many ways, including by 'civil suits.'" (Pl. Opp., at 9 (quoting *Carvel Corp. v. Noonan*, 350 F.3d 6, 19 (2d Cir. 2003)). That much is true, but whatever the form of the alleged conduct, it must be criminal, independently tortious, or motivated solely the purpose of inflicting harm on the plaintiff. *Carvel Corp.*, 3 N.Y.3d at 190; *accord Hassan v. Deutsche Bank A.G.*, 515 F. Supp. 2d 426, 429–30 (S.D.N.Y. 2007), *aff'd*, 336 F. App'x 21 (2d Cir. 2009); *Sidney Frank Importing Co. v. Beam Inc.*, 998 F. Supp. 2d 193, 211–12 (S.D.N.Y. 2014); *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 343–44 (S.D.N.Y. 2008).

The essence of SDC's unfair competition claim is that Acacia, by means of its affiliates' lawsuits, falsely represented to SDC customers that they do not enjoy immunity from suit for infringement of Acacia patents, and thereby engaged in "deceptive acts and/or practices" in the conduct of its business. (Compl. ¶ 49.) The lawsuits were, moreover, allegedly "baseless" and the product of Acacia's "bad faith." (*Id.* ¶¶ 50–51.)

The analysis applied under § 43(a) of the Lanham Act, New York common law, and § 349 of the General Business Law is "substantially the same." *Avon Products, Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 800 (S.D.N.Y. 1997). One element in common among these causes of action is that the defendant's conduct must be, in some sense, directed towards consumers. Under the Lanham Act and New York common law, a defendant's material misrepresentations must be made "in the context of commercial advertising or commercial promotion." *Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1019 (S.D.N.Y. 1994) (Lanham Act); *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 244 (S.D.N.Y. 2013) ("An unfair competition claim under New York common law requires all the elements of a Lanham Act unfair competition claim plus a showing of bad faith."). This, in turn, requires a plaintiff to allege that, among other things,[12] the defendant's misrepresentations were "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Mobius Mgmt. Sys.*, 880 F. Supp. at 1019–20 (quoting *Gordon and Breach Sci. Publishers S.A. v. Am. Inst. of Physics,* 859 F. Supp. 1521, 1536 (S.D.N.Y. 1994)) (internal quotation mark omitted).

---

[12] A plaintiff must also allege that the misrepresentation constitutes commercial speech; that it was made by a defendant who is in "commercial competition" with the plaintiff; and that it was made "for the purpose of influencing consumers to buy defendant's goods or services." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56 (2d Cir. 2002) (internal quotation mark omitted).

In a similar vein, a plaintiff suing under § 349 of the General Business Law must allege "consumer oriented" conduct on the defendant's part. *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 126 (2d Cir. 2000) (quoting *Gaidon v. Guardian Life Ins. Co.,* 94 N.Y.2d 330, 344 (1999)) (internal quotation marks omitted). While a defendant's competitors have standing to bring claims under § 349, "the gravamen of the complaint must be consumer injury or harm to the public interest." *digiGAN, Inc. v. Ivalidate, Inc.*, 02-CV-420, 2004 WL 203010, at *6 (S.D.N.Y. Feb. 3, 2004) (quoting *Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 (2d Cir.1995)) (internal quotation marks omitted).

Even assuming that the lawsuits initiated by Acacia's affiliates qualify as "material misrepresentations" or "deceptive acts," SDC has failed to state a claim for unfair competition. It has not alleged that Acacia disseminated the fact of its affiliates' lawsuits in a manner amounting to advertising or promotion within the industry. Nor has it claimed that the harm flowing from Acacia's conduct was borne by its customers or other consumers. Rather, it alleges harm only to *its own* goodwill, reputation, and contractual relations with customers. (Compl. ¶ 52.) As a result, SDC's claim for unfair competition is dismissed.

### E.   Abuse of Process

The Complaint further claims that Acacia's conduct constituted an abuse of process under New York law.

An abuse of process claim consists of three elements: "(1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *O'Bradovich v. Vill. of Tuckahoe*, 325 F. Supp. 2d 413, 434 (S.D.N.Y. 2004). To make out the first element, a plaintiff must allege that the process unlawfully interfered with the plaintiff's person or property. *Colina*

*v. One E. River Place Realty Co., LLC*, 99-CV-5173, 2000 WL 1171126, at *4 (S.D.N.Y. Aug. 17, 2000). "[T]he institution of a civil action by summons and complaint is not legally considered process capable of being abused," and is therefore insufficient to satisfy the first element of abuse of process. *PSI Metals, Inc. v. Firemen's Ins. Co. of Newark, N.J.*, 839 F.2d 42, 43 (2d Cir. 1988) (quoting *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984)) (internal quotation marks omitted).

The Complaint does not allege that Acacia's affiliates have done any more than initiate civil actions against SDC customers. Nonetheless, relying on *O'Bradovich*, SDC contends that it has satisfied the first element because Acacia sought to deprive it of property "under color of process." (Pl. Opp., at 11 (quoting *O'Bradovich*, 325 F. Supp. 2d at 434 (S.D.N.Y. 2004)) (internal quotation marks omitted)).

SDC misinterprets *O'Bradovich*. *O'Bradovich* correctly explained that "a malicious motive alone does not give rise to a cause of action for abuse of process under New York law; rather, [the] plaintiff must allege misuse of process after it was issued, or that the defendant acted to deprive the plaintiff of property 'under color of process.'" *Id.* at 434 (quoting *Williams v. Williams*, 23 N.Y.2d 592, 595 (1969)). Nothing in *O'Bradovich* alters the rule that the mere initiation of a suit by summons and complaint is insufficient to sustain a claim for abuse of process. Nor did the court in *O'Bradovich* see itself as doing so. *See id.* ("The institution of a civil action by summons and complaint, a process necessary to obtain jurisdiction and begin a lawsuit, is not a sufficient basis for meeting the first element." (quoting *Colina*, 2000 WL

1171126, at *4) (internal quotation marks omitted); *id.* ("[Plaintiffs] only allege that the *filing* of the [lawsuit] was an abuse of process, which, as a matter of law, it cannot be.").[13]

Again, the Complaint contains no allegation that Acacia's affiliates did anything more than initiate civil actions by summons and complaint. SDC therefore fails to state a claim for abuse of process.

### F. Prima Facie Tort

Finally, SDC alleges that Acacia's actions give rise to an action for prima facie tort.

"Prima facie tort is a disfavored claim under New York law." *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 304 (S.D.N.Y. 2002). It has four elements: "(1) intentional infliction of harm; (2) causing special damages; (3) without excuse or justification; and (4) by an act or series of acts that would otherwise be lawful." *Id.* (citing *Curiano*, 63 N.Y.2d at 117).

The "touchstone" of prima facie tort is "disinterested malevolence" on the defendant's part. *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990) (quoting *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 333 (1983)) (internal

---

[13] *See also Dahiya v. Kramer*, 13-CV-3079, 2014 WL 1278131, at *5 (E.D.N.Y. Mar. 27, 2014) ("Read in context . . . *O'Bradovich* cannot reasonably be read to create an exception to the abuse of process doctrine. Instead, *O'Bradovich* indicates that a plaintiff must allege that the defendant acted to deprive the plaintiff of property rather than merely alleging a malicious motive.").

SDC also cites *Parkin v. Cornell Univ.*, 78 N.Y.2d 523 (1991), in which the Court of Appeals remarked that "nothing in this Court's holdings would seem to preclude an abuse of process claim based on the issuance of process itself." *Id.* at 530. However, as this Court has explained, the Court of Appeals has never actually so held, and even after *Parkin*, the Second Circuit has maintained that "[t]he gist of abuse of process is the improper use of process *after* it is regularly issued." *Richardson v. N.Y.C. Health & Hospitals Corp.*, 05-CV-6278, 2009 WL 804096, at *16 (S.D.N.Y. Mar. 25, 2009) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)) (internal quotation mark omitted). Because Second Circuit law controls in this Court, *Parkin*'s *dicta* "does not alter the established law governing malicious abuse of process claims." *Id.*; accord *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 213 (S.D.N.Y. 2014); *Gilman v. Marsh & McLennan Companies, Inc.*, 868 F. Supp. 2d 118, 131–32 (S.D.N.Y. 2012).

quotation marks omitted). That is, a defendant's conduct must not simply be harmful; it must also be driven by "the sole intent to harm." *Id.* Motives such as mere profit or business advantage cannot sustain a prima facie tort claim. *Id.*

The Complaint fails to plead that Acacia acted with "disinterested malevolence." Rather, it alleges only that Acacia "maliciously intended to harm SDC without excuse or justification." (Compl. ¶ 63.) This is insufficient to state a claim for prima facie tort. *See MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 588 (E.D.N.Y. 1997) ("Where the plaintiff merely pleads intentional and malicious action, but not that the defendant's 'sole motivation' was 'disinterested malevolence,' the complaint will be dismissed.") (quoting *Lindner*, 59 N.Y.2d at 333).

Also fatal to SDC's claim is the absence of any allegation of special damages. This element requires a plaintiff to allege "suffer[ing] specific and measurable loss" as a result of a defendant's conduct. *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143 (1985); *accord Biosafe-One, Inc. v. Hawks*, 639 F. Supp. 2d 358, 369 (S.D.N.Y. 2009), *aff'd*, 379 F. App'x 4 (2d Cir. 2010). The injury alleged here—"irreparable harm to SDC's goodwill and reputation," (Compl. ¶ 64)—lacks the requisite degree of specificity. Accordingly, SDC's prima facie tort claim is dismissed.

## IV. Conclusion

For the foregoing reasons, Acacia's motion to dismiss is DENIED as to the breach of contract claim and GRANTED as to the balance of SDC's claims.

The Court has reviewed SDC's Proposed Amended Complaint, (Dkt. No. 30, Declaration of Jennifer C. Tempesta in Support of Conditional Motion for Leave to Amend Complaint, Ex. A (filed under seal)), and has determined that amendment here would be futile. *See Ruffolo v.*

*Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Accordingly, SDC's conditional motion for leave to amend its Complaint is DENIED.

The Clerk of Court is directed to close the motions at docket numbers 10, 17, 25, 27, and 29.

SO ORDERED.

Dated: December 3, 2014
       New York, New York

_____
J. PAUL OETKEN
United States District Judge